Totten, J.,
delivered the opinion of the court.
This bill was filed under the act of 1846, ch. 57, § 8, in the name of the State, by William Gr. Swan, *90 Attorney General, on tbe relation of John Dolan, in chancery, at Clarksville, and alleges:—
That defendant is an incorporated company, with the •right to construct, continue and own a turnpike road, to begin at Clarksville, and to go to the State line, in the direction of Busselville, Kentucky; and to erect toll gates thereon, and receive tolls as stated and permitted by its charter: — Vid. Acts 1830 and 1838.
That the road was constructed, and a toll gate erected at the distance of one mile from the town of Clarksville; that it was afterwards moved forty or fifty yards nearer to Clarksville, to intercept a line of travel.
That defendant, under a proper construction of its charter, may erect a toll gate at the distance of two miles from Clarksville, and not nearer. That the gate located between the town and Bed river, where its tolls are exacted, obstructs and annoys the free use of a ford on the river, and the free use of water at the river. That it obstructs and annoys the necessary intercourse of citizens of the town and its vicinage. That it obstructs and annoys their local trade and business, and is a great inconvenience and injury to the relator. The prayer is, that said gate be abated as a nuisance.
The bill was dismissed on demurrer, and plaintiff appealed.
By the words of the charter, the defendant may “erect a toll gate within two miles of Olarhsville, and appoint a toll-gatherer thereat.”
Eor the defendant it is argued, that the gate may be erected at any place between the town of Clarks-ville and the two mile point; that within these limits its location is left to the discretion of the defendant. *91 That this is tbe obvious meaning of tbe words used in the statute, by which the franchise was granted.
It is a general rule that the words of a statute, if of common use, are to be taken in their natural and ordinary sense, and without any forced or subtle construction to limit or extend their import: 1 Wheaton, 326. 20 Wendell, 561.
But it is also a rule that the real intention when\ accurately ascertained, will always prevail over the literal sense of terms. 1 Kent. Com. 462. People vs. Utica Ins. Co. 15 Johns. R., 380. Whitney vs. Whitney. 14 Mass. R. 92. Dwarris on Statutes, 725.
And, therefore, it is said a thing which is in the letter of a statute, is not within the statute, unless it be within the intention of the makers. Dwarris on' Statutes, 691.
Now, to discover this intention the courts may consider the subject matter, the effects and the reason of the statute.
The charter controls and restrains in some degree the discretion of the defendant in the location of his gate. If left to discretion, it is evident that it would be most to the interest of the defendant to place his gate near the terminus of the road at the town, so that a greater number of persons of the town and vi-cinage must pass through the gate and be subject to the payment of tolls.
It is clear, also, that a gate so situated, must prove to be a greater annoyance and inconvenience to such persons, as they must constantly pass it in their intercourse and business affairs.'
Now, it was not for the benefit of the defendant *92 that this restraint was imposed on his discretion, in the important matter of locating his gatei It would be more to his advantage to grant it, in this respect, a free discretion.
On the contrary, it, is evident, that the restraint Was imposed for the ease and convenience of the public, interested in the location of the gate, and subject to be affected by it. A gate located at or near the town, is no doubt an innconvenienee to its citizens, and a tax upon its business.
Considered in this light, how is the provision in question to be read and interpreted?
"We answer, not by a literal adherence to the words, but by the evident intent collected from the subject, and the reason and spirit of the provision.
That is, it must be construed in reference to the ease and convenience of the town and its vicinage, so far as they were intended to be protected by the limited restraint imposed on defendant in this respect.
And in this view, the true reading is, that defendant may “erect a toll gate within two miles of Clarks-ville, but not nearer.” This negation was evidently intended and implied, as we think, when the charter was granted.
"We may farther observe in support of the present judgment, that public grants, like the one now before us, are to be construed strictly, and that nothing passes against the State or the public by implication. This may now be considered a settled principle. 3 Kent, Com., 459. Note. 11 Peters, 420. 11 Leigh, 42.
But if this were not a true construction of the charter, it is clear that the gate having been once lo *93 cated, it cannot afterwards be removed to another place, as stated in tbe bill. Conceding the right to a discretion in this respect, yet the election being made, the discretion is determined, and the gate becomes fixed and immovable, as was held by this court in the Louisville and Nashville Turnpike Company vs. Nashville and. Kentucky Turnpike Company. 2 Swan R., 282.
The result is, that the decree of the chancellor was erroneous; it will therefore be reversed, and the cause remanded, to be further proceeded in.
Decree reversed.